[No. B184145. Second Dist., Div. Five. Sept. 28, 2006.]

AMERUS LIFE INSURANCE COMPANY, Cross-complainant and Appellant, v.
BANK OF AMERICA, N.A., Cross-defendant and Respondent.

**COUNSEL**

Walters, Bender, Strohbehn & Vaughan, J. Michael Vaughan, Garrett M. Hodes; Barger & Wolen, Bryan C. Crawley and Vivian I. Orlando for Cross-complainant and Appellant.

Barton, Klugman & Oetting, Robert Louis Fisher and Randall H. Kennon for Cross-defendant and Respondent.

**OPINION**

**KRIEGLER, J.**—We review the granting of a summary judgment in favor of cross-defendant and respondent Bank of America, N.A. (BofA), on the cross-complaint of appellant AmerUS Life Insurance Company (AmerUS) alleging a conversion cause of action. The underlying lawsuit arose out of a fraud perpetrated by defendant Richard Shear against an elderly widow named Maxine E. Levy, trustee of the Levy Family Trust. In the period from late 1995 through the summer of 1996, Shear, an independent life insurance agent, persuaded Levy to buy $450,000 in annuity life insurance policies from AmerUS. However, instead of remitting her three $150,000 checks to AmerUS, Shear deposited the checks made payable to AmerUS into his own corporate BofA accounts. As part of his fraud, Shear provided Levy with forged or fake annuity policies. After Levy died in 2001, the successor trustee

and beneficiary, Norma Berneman (plaintiff), filed a claim on the policies with AmerUS. AmerUS denied the claims because it had no knowledge of any such policies. In July 2002, plaintiff sued Shear, AmerUS, BofA, and others on a variety of claims to recover the losses arising out of the wrongfully paid checks. Shear, however, could not be located.

On December 17, 2002, AmerUS filed its cross-complaint against BofA for conversion of the checks, alleging that by paying them into Shear's accounts over his fraudulent endorsements, BofA exercised wrongful dominion over AmerUS's property interest as payee of the checks. BofA moved for summary judgment on the ground that the conversion claim was barred by the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (c), and California Uniform Commercial Code section 3118, subdivision (g). The trial court entered summary judgment in favor of BofA on an alternative ground, and AmerUS filed a timely appeal from that ruling. As the uncontroverted facts show that AmerUS's conversion claim was time-barred, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As is relevant to this appeal, plaintiff sought to recover against the various defendants for wrongful payment of the three checks, each made payable to AmerUS and deposited into Shear's BofA accounts—check No. 1499, dated December 28, 1995 (paid January 30, 1996); check No. 290, dated December 22, 1995 (paid February 2 1996); and check No. 301, dated July 2, 1996 (paid July 5, 1996). Shear and his wife had opened two accounts at an Arizona branch of BofA in the name of their corporation, U.S. Life Insurance Marketing, Inc. These were not trust accounts. According to AmerUS, U.S. Life Insurance Marketing, Inc., was a nonexistent corporation. In 1995, BofA designated that the corporate owner of those accounts was doing business as The New England, American Mutual Life. At that time, AmerUS operated as American Mutual Life.

According to the operative pleadings,[1] in late 1995 and early 1996, the 85-year-old Levy was engaged in estate planning efforts with her attorney, Isaac Berneman, who introduced her to Shear for the purpose of obtaining an annuity investment for Levy's trust. Shear convinced Levy to purchase a $300,000 "Flexible Premium Deferred Annuity" insurance policy from AmerUS. The policy did not provide annual payments. Rather, it guaranteed a 6.05 percent return, with accumulated interest to be automatically reinvested.

---

[1] At the time of BofA's summary judgment motion, the operative pleadings included plaintiff's fourth amended complaint, AmerUS's answer to that pleading, and its second amended cross-complaint against BofA, along with BofA's motion for summary judgment on the fourth amended complaint and on AmerUS's second amended cross-complaint.

The policy would become payable in full upon Levy's 95th birthday or her death, whichever came first. Levy delivered to Shear two $150,000 checks payable to AmerUS for that purpose. Levy subsequently received by mail a document dated March 11, 1996, purporting to be a $300,000 annuity policy.

According to AmerUS's evidence, the policy was a forgery. On approximately March 11, 1996, AmerUS received an application for a *$3,000* annuity policy on behalf of the Levy Trust with Isaac Berneman as trustee. That application was accompanied by a $3,000 cashier's check from BofA for the premium payment, issued on behalf of the Levy Trust. AmerUS issued a $3,000 annuity policy to the Levy Trust, which it delivered to Isaac Berneman as trustee. Because AmerUS never received an application for the supposed $300,000 annuity policy (or any premium payment in that amount), it did not issue any such policy.

The documentary evidence submitted by AmerUS shows that Levy issued a $150,000 check, dated December 29, 1995 (No. 1499), which was made out to "American Mutual." Shear originally endorsed it on January 19, 1996, with a stamp "U.S. Life Insurance Marketing, Inc." and deposited the check into one of his BofA accounts. The check was initially rejected by Levy's bank with the notation "Endorsement Not As Drawn." Shear, however, re-endorsed it on January 29, 1996, by writing "American Mutual" over the stamped endorsement and redeposited the check into one of his BofA accounts. Levy issued another $150,000 check (No. 290), payable to AmerUS, dated December 22, 1995. Shear endorsed it on February 1, 1996, with the same stamp and by writing "American Mutual" over it and deposited the check into one of his BofA accounts.

On July 2, 1996, Levy issued check No. 301, payable to "American Mutual." Shear endorsed it on July 2, 1996, in the same manner and deposited it into one of his BofA accounts. As before, Levy received by mail a document purporting to be an annuity policy from AmerUS, this time in the amount of $150,000 and dated July 2, 1996. According to AmerUS's evidence, the policy was a forgery. As AmerUS never received an application or premium payment for such a policy, it never issued one.

According to AmerUS's evidence, it never gave Shear authority to endorse, negotiate, or deposit checks payable to AmerUS. It has never given its independent agents or brokers such authority. The only contractual arrangement between Shear and AmerUS was a general agents contract, which classified Shear as an independent contractor, granted him the "authority to collect the first premium only" and required him to "promptly remit the premium to" AmerUS. Further, AmerUS had no knowledge of, or interest in,

Shear's BofA accounts; AmerUS had no accounts of its own at BofA. Finally, AmerUS never authorized BofA to permit Shear to use AmerUS's name on any BofA account.

Levy died in July 2001. On March 22, 2002, plaintiff filed a "death claim" with AmerUS under the supposed two annuity policies. AmerUS denied the request on the ground that it had never received applications or payments for either policy, and the only policy it ever issued to the Levy Trust was the $3,000 annuity policy. AmerUS informed plaintiff that the other two policies were forgeries. Plaintiff accepted payment on the $3,000 policy.

Plaintiff's complaint was filed on July 29, 2002. In its second amended cross-complaint against BofA, AmerUS alleged that in specified paragraphs of the underlying complaint, plaintiff had claimed that AmerUS alone or in concert with BofA was liable for damages arising out of Shear's disposal of the three Levy checks. AmerUS denied liability to plaintiff, but alleged that if it were found liable to plaintiff on the underlying complaint, then BofA would be liable to AmerUS under California Uniform Commercial Code section 3420 for the conversion of the Levy checks made payable to AmerUS. AmerUS specifically alleged that Shear fraudulently endorsed the Levy checks, which were payable to AmerUS's predecessor in interest, American Mutual Life Insurance Company. Invoking California Uniform Commercial Code section 3420, AmerUS alleged that if Shear were found to be AmerUS's agent for purposes of receiving delivery of the Levy checks, then BofA would be liable to AmerUS for converting the checks. BofA asserted a variety of affirmative defenses, including that the conversion claim was time-barred pursuant to the limitations periods in Code of Civil Procedure section 338 and California Uniform Commercial Code section 3118, subdivision (g), and other statutes not pertinent to this appeal. BofA also cross-complained against AmerUS for indemnity and damages under a third party tort theory.

BofA moved for summary judgment against plaintiff and AmerUS, while AmerUS moved simultaneously for summary judgment against plaintiff and BofA. The trial court granted BofA's motions against both parties. (It also denied AmerUS's motion against BofA, but granted AmerUS's summary adjudication motion on various claims as to plaintiff.) Although BofA's primary argument in favor of summary judgment against AmerUS was that the conversion claim was time-barred, the trial court granted relief on a different theory. Invoking the federal appellate authority of *In re Bartoni-Corsi Produce, Inc.* (9th Cir. 1997) 130 F.3d 857, the trial court found that BofA could not have converted the Levy checks because AmerUS authorized Shear as its agent to negotiate the checks. Consistent with the applicable standard of review, we do not assess the propriety of the trial court's reasoning because

BofA's affirmative defense, based on the statute of limitations, was fully addressed below and is dispositive of this appeal.[2]

After the summary judgment rulings, but before entry of judgment against AmerUS, BofA settled its remaining claims with plaintiff in exchange for waivers of costs and dismissals with prejudice. Over AmerUS's objection, the trial court granted BofA's motion for a good faith settlement determination. Sometime after the summary judgment ruling, AmerUS and plaintiff settled their claims against each other. Plaintiff's request for dismissal with prejudice as to AmerUS was filed on August 30, 2005, about one month after AmerUS filed its notice of appeal.

## DISCUSSION

*AmerUS's Conversion Claim Is Barred by the Three-Year Statute of Limitations*

BofA, relying on the general rule that an instrument is converted when it is paid to an unauthorized person, argues that the three-year statute of limitations began to run in 1996, when BofA paid the checks into Shear's accounts. Accordingly, the limitations period expired more than three years before AmerUS filed its cross-claim in December 2002. AmerUS counters that its conversion claim could not have accrued until it suffered damages, which it asserts could not occur until it incurred monetary liability to plaintiff on the checks. That is, AmerUS argues that because it never issued any policies in exchange for the checks, it had "no interest" in the checks at the time BofA paid them—and never suffered any damages until 2005, when AmerUS entered into a settlement agreement with plaintiff after the trial court ruled on the summary judgment motions.

As we explain below, while that argument is carefully constructed, it is ultimately untenable and self-defeating. To prevail on a conversion claim against BofA, AmerUS needed to establish that it had a possessory interest in the checks from the time Levy delivered the checks to Shear to the time BofA deposited them into Shear's account. Unfortunately for AmerUS, if Shear was AmerUS's agent at the time of conversion and if AmerUS was the rightful payee—as must be the case for BofA to be potentially liable under California Uniform Commercial Code section 3420—then the conversion claim accrued at the time of negotiation in 1996 and there is no basis for equitable tolling of the statute. Therefore, the conversion claim is time-barred as a matter of law.

---

[2] BofA does not rely on the trial court's reasoning in its appellate briefing.

The standard of review is well settled. As our Supreme Court instructs, the party moving for summary judgment always "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*) As cross-defendant, BofA "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

In other words, "[i]f a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment." (*Aguilar, supra,* 25 Cal.4th at p. 855.) " 'In determining the propriety of a summary judgment, the trial court is limited to facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. [Citations.] The court must consider all evidence set forth in the parties' papers, and summary judgment is to be granted if all the papers submitted show there is no triable issue of material fact in the action, thereby entitling the moving party to judgment as a matter of law. [Citation.]' [Citation.] '[S]ummary judgment shall not be granted . . . based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citations.]" (*Elcome v. Chin* (2003) 110 Cal.App.4th 310, 316 [1 Cal.Rptr.3d 631].)

"On appeal, 'our review is de novo, and we independently review the record before the trial court.' [Citation.] 'The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale.' " (*Elcome v. Chin, supra,* 110 Cal.App.4th at p. 316, quoting *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

■ AmerUS's conversion claim under California Uniform Commercial Code section 3420 is governed by a three-year limitations period. California Uniform Commercial Code section 3118, subdivision (g) provides that actions for conversion of an instrument "shall be commenced within three years after the cause of action accrues." As the California Uniform Commercial Code commentary makes clear, however, section 3118 "does not define when a cause of action accrues. Accrual of a cause of action is stated in other sections of Article 3 such as those that state the various obligations of parties to an instrument." (U. Com. Code com., 23A pt. 2 West's Ann. Cal. Com. Code (2002 ed.) foll. § 3118, p. 235.) We therefore look to the California Uniform

Commercial Code provision defining instrument conversion—section 3420—to determine when a conversion claim accrues. That section provides: "The law applicable to conversion of personal property applies to instruments," and an instrument is also converted if "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." (Cal. U. Com. Code, § 3420, subd. (a).)

■ Under Code of Civil Procedure, section 338, subdivision (c), which applies to the conversion of personal property, there is a three-year limitations period for "action[s] for taking, detaining, or injuring any goods or chattels." Under California law, the general rule is well established: "[T]he statute of limitations for conversion is triggered by the act of wrongfully taking property." (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1433 [128 Cal.Rptr.2d 31]; see also *Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 915–916 [59 Cal.Rptr.2d 474] (*Strasberg*) ["it is the act of wrongfully taking the property which triggers the statute of limitations"], citing *Coy v. E.F. Hutton & Co.* (1941) 44 Cal.App.2d 386, 390 [112 P.2d 639] and *First National Bk. v. Thompson* (1943) 60 Cal.App.2d 79 [140 P.2d 75]; see also *Rose v. Dunk-Harbison Co.* (1935) 7 Cal.App.2d 502, 505–506 [46 P.2d 242].)

■ To the extent our courts have recognized a "discovery rule" exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff. In those instances, "the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion." (*Strasberg, supra*, 51 Cal.App.4th at pp. 916–917; see *Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 561 [305 P.2d 20]; *Sears v. Rule* (1945) 27 Cal.2d 131, 147–148 [163 P.2d 443]; *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 436–441 [159 P.2d 958].) AmerUS cannot take advantage of this limited discovery rule exception because there is no evidence that BofA or any of its agents was guilty of fraudulent concealment, much less that BofA owed a fiduciary duty of disclosure to AmerUS.

■ Of course, there is evidence that *Shear* fraudulently concealed the relevant facts from AmerUS. However, in order to state a claim for conversion under California Uniform Commercial Code section 3420, AmerUS must prove that Shear was its own agent for purposes of delivery—otherwise AmerUS could not establish the element of possession that is necessary to prevail on that cause of action. Under California Uniform Commercial Code section 3420, for a payee like AmerUS to recover for conversion of an instrument, the payee must have actual or constructive possession of the

stolen instrument bearing the payee's name. (2 White & Summers, Uniform Commercial Code (4th ed. 1995) § 18-4, pp. 218–222 (White & Summers).) "An action under [California Uniform Commercial Code] section 3420 may not be brought by a payee who does 'not receive delivery of the instrument either directly or through delivery to an agent or a copayee.' ([Cal. U. Com. Code,] § 3420, subd. (a).) There can be no conversion action until the check is delivered to the payee because until delivery, the payee is not a holder and has no property interest in the check." (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 485 [56 Cal.Rptr.2d 756].) The official comment to California Uniform Commercial Code section 3420 "makes it clear that delivery of a check to an agent for the payee is delivery to the payee and thus gives the payee a caused of action if the check is stolen." (White & Summers, *supra*, § 18-4, at p. 221.)

Moreover, the "decided majority of other jurisdictions" has refused to apply the discovery rule to claims for conversion of instruments, "except where the defendant invoking the statute of limitations engaged in fraudulent concealment." (*Rodrigue v. Olin Employees Credit Union* (7th Cir. 2005) 406 F.3d 434, 445 (*Rodrigue*).) In *Rodrigue*, the Seventh Circuit collected the decisions supporting the majority and minority rule, and explained the strong policy concerns militating against a broad discovery rule. (*Id.* at pp. 445–447; see also *Menichini v. Grant* (3d Cir. 1993) 995 F.2d 1224, 1230–1231.) "The rationale most often cited in support of the majority perspective is that application of the discovery rule would be inimical to the underlying purposes of the UCC, including the goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions. In keeping with those goals, negotiable instruments are intended to function efficiently, and liability on those instruments is not meant to be open-ended." (*Rodrigue, supra*, 406 F.3d at pp. 445–446.) It is well recognized that "[t]he purpose of the California Uniform Commercial Code . . . is to simplify and clarify the law governing commercial transactions in a uniform manner among the various jurisdictions." (*Gil v. Bank of America, Nat. Assn.* (2006) 138 Cal.App.4th 1371, 1375 [42 Cal.Rptr.3d 310], fn. omitted (*Gil*).) As the majority rule is consistent with our courts' precedent, we see no reason not to apply it.

For the sake of completeness, we note that "[i]n 1982 the Legislature amended the three-year statute of limitations on actions involving conversion and expressly adopted the discovery rule for theft of certain types of articles. Code of Civil Procedure section 338, subdivision (c) now specifies '[t]he cause of action in the case of theft, as defined in Section 484 of the Penal Code, of any article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved party, his or her agent, or the law enforcement agency which originally investigated the theft.' [¶] The Court of Appeal in

*Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421 [49 Cal.Rptr.2d 784] held as a matter of law the discovery rule had also been implicit in prior versions of the statute stating the limitations period for conversion actions. The Court of Appeal in *Society of Cal. Pioneers v. Baker* (1996) 43 Cal.App.4th 774 [50 Cal.Rptr.2d 865] disagreed with the *Naftzger* court on this particular point but held the 1982 amendment adopting the discovery rule for theft nevertheless applied to all pending matters not already barred by the statute of limitations or otherwise." (*Strasberg, supra,* 51 Cal.App.4th at p. 916, fn. 10.) As the conversion of instruments does not fall within Code of Civil Procedure section 338, subdivision (c)'s discovery rule category, and as the limited discovery rule for conversion cases discussed above is unavailable to AmerUS, we need not resolve the conflict between *Naftzger* and *Society of Cal. Pioneers* in this appeal.

In any event AmerUS disclaimed any reliance on the discovery rule below.[3] Instead, it argues that its conversion cause of action did not accrue— meaning that BofA's conversion was not complete—until AmerUS incurred a legal obligation to plaintiff for her losses for wrongful payment of the checks. By AmerUS's reasoning, its conversion claim had not even ripened at the time of the summary judgment motion: It "had no interest in the checks, and had suffered no actual loss by their negotiation, not even when Plaintiff brought her lawsuit, but only when she received payment through settlement" with AmerUS.

■ Once again, we reject this inherently contradictory and self-defeating argument. Unless the discovery rule applies, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 [27 Cal.Rptr.3d 661, 110 P.3d 914].) AmerUS concedes that to establish a conversion claim, a " 'plaintiff must establish an actual interference with his *ownership* or *right of possession.* . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion.' [Citations.]" (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 136 [271 Cal.Rptr. 146, 793 P.2d 479], fn. omitted; see also *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452 [61 Cal.Rptr.2d 707] [to state a claim for conversion, a party "need only allege it is *'entitled to immediate possession at the time of conversion'* "].) AmerUS cannot contend that it had a possessory interest in the checks as payee at the time of negotiation for purposes of maintaining its conversion claim, while simultaneously asserting that it had no interest in the

---

[3] In its opposition to BofA's summary judgment motion, AmerUS argued that it "does not rely upon the 'discovery rule' for its claim."

checks and suffered no damage by their negotiation for purposes of avoiding the statute of limitations.

As explained above, under California Uniform Commercial Code section 3420, the gravamen of a conversion claim is the wrongful interference with another's property rights.[4] There could have been no conversion unless AmerUS was entitled to possess the checks at the time BofA negotiated them. If that were the case, AmerUS's conversion claim necessarily accrued at the time of payment to Shear because it was the negotiation that divested AmerUS of its possessory right—regardless of any obligations it might have had to third parties such as plaintiff. Stated another way, AmerUS offers no authority for the dubious proposition that a conversion claim can remain inchoate, in a state of suspended animation from the time of the improper taking, only to spring into life years later when a third party takes action to the detriment of the supposed plaintiff. Still less persuasive is AmerUS's assertion that, for purposes of its conversion claim against BofA, Shear became AmerUS's agent six years after the fact when AmerUS incurred liability to plaintiff. Certainly, AmerUS identifies no authority for the proposition that "delivery" under California Uniform Commercial Code section 3420, subdivision (a) can occur retroactively.

Finally, AmerUS argues that California Uniform Commercial Code section 3118, subdivision (g) supports its delayed accrual theory because it exempts indemnity and contribution claims from the three-year limitations period: *"Unless governed by other law regarding claims for indemnity or contribution,* an action (1) for conversion of an instrument, for money had and received, or like action based on conversion, (2) for breach of warranty, or (3) to enforce an obligation, duty, or right arising under this division and not governed by this section shall be commenced within three years after the cause of action accrues." (Cal. U. Com. Code, § 3118, italics added.) This argument fails because—as AmerUS has emphatically represented to this court and below—its claim is not governed by "other law" regarding indemnity or contribution. Rather, its claim is for conversion under California Uniform Commercial Code section 3420. As explained above, AmerUS's claim can only be considered as sounding in "indemnity" to the extent one accepts the mistaken notion that there was no completed conversion until AmerUS settled with plaintiff for her losses. Certainly, AmerUS presents no

---

[4] The same is true with regard to conversion actions generally: "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543–544 [50 Cal.Rptr.2d 810].)

authority to support its assertion that California Uniform Commercial Code section 3118, subdivision (g)'s indemnity exemption applies under such circumstances.

Once again, AmerUS seeks to maintain mutually inconsistent positions. It abandoned its claims for negligence and indemnity against BofA in the trial court. As AmerUS acknowledges, the current revision of article 3 of the California Uniform Commercial Code, which includes section 3420, provides a comprehensive framework for allocating losses when a check bearing a fraudulent endorsement is paid or taken for collection. (*Lee Newman, M.D., Inc. v. Wells Fargo Bank* (2001) 87 Cal.App.4th 73, 81–84 [104 Cal.Rptr.2d 310]; see also *Gil, supra*, 138 Cal.App.4th at pp. 1376–1378 [payee's negligence claim against bank based on a missing endorsement by third party copayee on a check was superseded by the California Uniform Commercial Code action for conversion, which applies regardless of whether the endorsement was forged, unauthorized, or missing, and payee was fully compensated under conversion provision when bank paid item to third party copayee].)

As AmerUS strenuously argues on appeal, its conversion claim against BofA was wholly independent of any liability BofA might owe to plaintiff. AmerUS is correct in asserting that its conversion claim is dependant neither on BofA's being a joint tortfeasor nor on a theory of equitable indemnity. As explained above, under California Uniform Commercial Code section 3420, AmerUS and plaintiff cannot both maintain conversion actions against BofA because the issuer and the payee of the checks could not both have been in possession at the time of conversion. (See *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., supra,* 49 Cal.App.4th at p. 485.) Once again, AmerUS cannot have it both ways simultaneously. Either BofA converted AmerUS's property when it deposited the checks into Shear's accounts, regardless of any potential liability AmerUS might incur from plaintiff, or there could have been no conversion under the California Uniform Commercial Code. By the same token, if AmerUS's claim is truly derivative—that is, if the only damage it could have suffered was liability to plaintiff—then AmerUS is not alleging conversion against BofA, but seeking some kind of equitable indemnity—a position AmerUS abandoned below and disclaims on appeal.

The undisputed facts demonstrate that the three-year statute of limitations governing AmerUS's conversion claim expired well before it brought its claim against BofA. We therefore affirm the judgment below.

## DISPOSITION

The judgment is affirmed. BofA is to recover its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied October 26, 2006, and on October 30, 2006, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 13, 2006, S147804. Chin, J., did not participate therein.